El Pueblo de Puerto Rico, demandante y apelado, *v.* Félix Muñiz Marrero, acusado y apelante.

Núm. 11358.—*Sometido:* Abril 12, 1946. *Resuelto:* Abril 30, 1946.

986

*Enrique Báez García,* abogado del apelante; *Hon. Procurador General E. Campos del Toro (Luis Negrón Fernández,* como *Procurador General Interino,* en el alegato) y *J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Ésta es una apelación de una sentencia condenando al acusado a la pena de un año de presidio después de ser declarado culpable por un jurado del delito de homicidio voluntario.

Gregorio Castillo declaró a favor de El Pueblo de Puerto Rico que estaba acostado a las 9 p.m. el 18 de agosto de 1942, cuando oyó a su primo, el acusado, llamándolo. Se vistió y salió afuera, donde encontró discutiendo al acusado y a Jacinto Vargas, su cuñado. El acusado dijo al testigo: "Jacinto que me está esperando para pelear conmigo". El testigo les dijo que se fueran a sus casas, que ellos eran amigos. Vargas insistió en que no se iba para su casa y dijo al acusado, "Vamos a pelear al puño". Vargas tenía un palo en la mano y se dobló para ponerlo en el suelo, cuando el acusado le pegó a Vargas en la cabeza con el mango de plomo de un foete de cuero. Vargas cayó al suelo, el acusado cayó sobre él, y empezaron a pelear. El acusado, pero no Vargas quien era más fuerte que el acusado, comenzó a sangrar. Vargas logró quitarle el foete al acusado, después de lo cual éste huyó a su casa. Vargas abandonó el lugar y caminó hasta su casa.

El doctor que practicó la autopsia declaró que encontró una contusión sobre el ojo derecho de Vargas, quien murió alrededor de las 8 p.m. del 19 de agosto de una hemorragia cerebral que pudo haber sido producida por el golpe con el mango de plomo del foete que, según Castillo declaró, fué usado por el acusado para pegarle a Vargas.

En el contrainterrogatorio el doctor declaró que el cuerpo tenía solamente ese golpe, que no podía determinar cuánto tiempo pasó desde que Vargas recibió el golpe hasta que

murió, y que la contusión pudo haber sido causada por un golpe con un pedazo de madera, hierro, piedra o por un puño o por una caída.

El apelante alega que la culpabilidad del acusado, y especialmente el *corpus delicti,* no se estableció fuera de duda razonable. Su argumento es que la declaración del doctor no era suficiente bajo el artículo 206 del Código Penal[1] para demostrar fuera de duda razonable que la muerte de Vargas fué causada por el acusado, ya que el doctor declaró que el golpe con el foete solamente *pudo* haber causado la muerte de Vargas, mientras admitió por otro lado que su muerte pudo haber sido causada por algún golpe recibido de algunas otras posibles maneras.

Pero la prueba fué que el acusado le pegó a Vargas con un foete, que el médico encontró evidencia de un solo golpe en su cabeza, que tal golpe pudo causar una hemorragia fatal, y que murió al día siguiente a consecuencia de una hemorragia. No podemos decir que el jurado no estaba justificado al deducir que el golpe dado por el acusado fué la causa de la muerte de Vargas. Véanse *Pueblo* v. *Moreno,* 28 D.P.R. 104, 109–10; *Pueblo* v. *Maceira,* 40 D.P.R. 700, 703–4; *Pueblo* v. *Rosado,* 17 D.P.R. 441; *Pueblo* v. *Ives,* 110 P.2d 408 (Calif. 1941).

■■ El próximo error señalado se refiere al no haber el jurado dado crédito a la declaración del acusado al efecto de que, antes de la llegada de Castillo al lugar de los hechos, el finado, que se encontraba en estado de embriaguez, atacó al acusado, derribándolo del caballo en que iba hacia su casa, y que durante el altercado el acusado le pegó a Vargas con el foete que llevaba para pegarle al caballo. Estos hechos, según el acusado, demuestran que el finado provocó la pelea y

[1] El artículo 206 prescribe como sigue: "Ninguna persona podrá ser convicta de asesinato u homicidio, a menos que la muerte de la persona que se alegare haber sido muerta, y el hecho de la muerte que se alegare haber sido causada por el acusado, resultaren probados como actos independientes; aquélla por medio de pruebas directas y éste de modo que no haya lugar a duda razonable."

que el acusado le pegó en defensa propia. El acusado insiste en que el jurado estaba obligado a dar crédito a esta prueba, citando los casos de *Pueblo* v. *Pellicier,* 56 D.P.R. 882, y *Pueblo* v. *Sánchez,* 55 D.P.R. 351.

En el caso de *Sánchez* dijimos a la pág. 369 que "cuando se presenta en evidencia la confesión. . . que contiene manifestaciones exculpatorias, debe instruirse al jurado que tales manifestaciones deben ser consideradas como ciertas a menos que se destruyan". Sin embargo, los casos que citamos en el caso de *Sánchez* sosteniendo esta declaración revelan que ésta es una regla limitada, que tiene varias excepciones. *Yarbrough* v. *State,* 67 S. W. 2d 612, (Tex. 1933) ; *Combs* v. *State,* 108 S. W. 649 (Tex., 1908). Y existen autoridades para sostener la proposición de que en una confesión la materia exculpatoria debe ser tratada como cualquier otra evidencia, estando el jurado en libertad de creerla o rechazarla. VII Wigmore *on Evidence,* Tercera edición, sección 2100; véanse *Pueblo* v. *Arrocho,* 34 D.P.R. 847, 850–51; *Pueblo* v. *Flores,* 17 D.P.R. 178, 190.

Sin embargo, no necesitamos reexaminar la manifestación citada en el caso de *Sánchez;* aun cuando estuviéramos inclinados a seguirla, no se aplica a las circunstancias de este caso. Aquí no hubo confesión. Después que El Pueblo terminó su prueba, el acusado fué juramentado y declaró a su favor. Bajo esas circunstancias el jurado estaba en libertad de considerar al acusado como cualquier otro testigo y de dar crédito o rechazar todo, parte o nada de su declaración. *Pueblo* v. *Arrocho,* supra; *Pueblo* v. *Flores,* supra.(²)

Además, no hubo error perjudicial aquí, ya que la corte de distrito, a petición del acusado, de hecho dió instrucciones al jurado al efecto de que la teoría del caso de *Sánchez* era

---

(²) El caso de *Pellicier* no resuelve lo contrario. No aplica, como parece creer el acusado, la doctrina del caso de *Sánchez* a la declaración de un acusado que fué juramentado y declaró a su favor. Por el contrario, indicamos a la pág. 886 que la cuestión no tenía que ser considerada cuando no se solicitó una instrucción especial sobre este punto.

aplicable a la declaración del acusado durante el juicio, diciéndole que "la declaración del acusado Muñiz en el sentido de que el interfecto lo acometió y le dió dos palos cuando el acusado estaba montado en el caballo y que el acusado le tiró al agresor, que resultó ser Jacinto Vargas, estando montado todavía en el caballo para evitar recibir más golpes del interfecto, es una declaración que debe ser tenida por cierta por el jurado, a menos que ustedes consideren que existe prueba que demuestre lo contrario."

Esta instrucción favorecía más al acusado que aquella a la que tenía derecho de acuerdo con la ley. Pero aún asumiendo que esta instrucción represente una exposición correcta de la ley, el jurado no estaba obligado a decidir que mientras el acusado estaba todavía montado en el caballo y antes de la llegada de Castillo, el acusado golpeó a Vargas con su foete en defensa propia. El jurado estaba justificado en rechazar esta declaración del acusado porque el récord contiene "prueba que demuestre lo contrario"—la declaración de Castillo de que el acusado golpeó a Vargas con el foete después de Castillo haber llegado al sitio de los hechos y mientras el interfecto se doblaba a poner el palo en el suelo; y la declaración del doctor de que había un solo golpe en la cabeza o cuerpo de Vargas.

*La sentencia de la corte de distrito será confirmada.*